S05A1335. HOWERTON v. DANENBERG.

(621 SE2d 738)

HUNSTEIN, Presiding Justice.

In 1988, the State sought the death penalty against appellant Robert Danenberg based on charges of malice murder and aggravated assault arising out of the fatal shooting of Deborah Lamb. Danenberg pled guilty to the crimes in 1989 in exchange for a life sentence and a term of years. He subsequently sought habeas relief, which was denied. On its first appearance in this Court, we issued an order granting Danenberg's application for a certificate of probable cause to appeal and remanding the case for consideration of counsel's performance with regard to psychiatric evidence in light of *Turpin v. Bennett,* 270 Ga. 584 (513 SE2d 478) (1999). Danenberg twice amended his petition and in January 2005, the habeas court granted relief, finding that Danenberg's counsel provided ineffective assistance because counsel failed to reasonably investigate the possible side effects of medication Danenberg was taking at the time of the crimes and because counsel was operating under a conflict of interest at the time of the plea. The warden appeals, and for the reasons that follow, we affirm.

A review of the record in this case reveals that after Danenberg's arrest, he was committed to Central State Hospital for psychiatric evaluation. Danenberg retained an experienced criminal attorney who had been practicing law since 1973. During his investigation into the crimes and possible defenses, counsel learned that Danenberg had previously experienced minor mental health problems and had taken anabolic steroids as part of his weight-lifting regimen. Counsel retained the services of Dr. Harrison Pope, a nationally recognized mental health expert with a subspecialty in the effects of steroid use, and provided Dr. Pope with all information relevant to Danenberg's history, including a list of medications Danenberg was using at the time of the crimes. Included on the list was a prescription for Medrol, a corticosteroid prescribed to reduce muscle inflammation that Danenberg was taking for injuries he received in an automobile accident shortly before the crimes. Dr. Pope focused on Danenberg's use of anabolic steroids and opined that these drugs could have caused Danenberg to have a psychotic reaction rendering him legally insane at the time of the crimes. Based on this information, counsel intended to present an insanity defense and to use Danenberg's mental health

history in mitigation. Instead, this information was provided to the State and a plea agreement reached.

A few years after his incarceration, Danenberg again took Medrol after it was prescribed for him by a prison physician. The evidence supports the habeas court's finding that Danenberg's ingestion of Medrol induced a severe psychotic episode that was observed and documented by a prison physician, who afterwards opined that if Danenberg had been taking Medrol at the time of the offenses, he would have had a valid defense of insanity and involuntary intoxication. Based on the testimony of the prison physician and the similar testimony of other expert witnesses, the habeas court determined that in rare circumstances individuals taking Medrol have severe adverse psychotic reactions and that evidence of such reaction could have substantially benefitted Danenberg during plea negotiations and at trial. Accordingly, the habeas court concluded that counsel's failure to thoroughly investigate the medical consequences of Danenberg's ingestion of Medrol and to question mental health professionals about the effects of Medrol constituted ineffective assistance of counsel.

The habeas court further found that during the time that Danenberg's trial counsel was representing him on the criminal charges at issue in this appeal, counsel was simultaneously representing the district attorney, Joseph Briley, in a well-publicized federal challenge to Briley's use of peremptory strikes to remove minorities from his juries. The concurrent representation was not disclosed to the trial court or Danenberg. These findings formed the basis of the habeas court's conclusion that Danenberg was denied his right to effective assistance of counsel because of counsel's conflict of interest.

1. The habeas court properly granted Danenberg relief based on his counsel's conflict of interest. To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). This Court has stressed that "[u]ndivided loyalty is an essential element of the right to counsel." *Sallie v. State*, 269 Ga. 446, 448 (499 SE2d 897) (1998). See *Wood v. Georgia*, 450 U. S. 261, 271 (101 SC 1097, 67 LE2d 220) (1981) ("[w]here a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest"). Where counsel operates under an actual conflict of interest, counsel's loyalty may be divided so as to constitute the denial of effective assistance of counsel.

However, "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Strickland v. Washington*, supra at 692 (III) (B). In those instances wherein the defendant's right to counsel is denied altogether, a per se presumption of prejudice to the defense applies. "Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. [Cit.]" *Strickland v. Washington*, supra at 692 (III) (B).

*Fogarty v. State*, 270 Ga. 609, 610 (513 SE2d 493) (1999).

Danenberg contends that his counsel's concurrent representation of the district attorney gave rise to a conflict of interest which effectively denied him his right to counsel. See *Cuyler v. Sullivan*, 446 U. S. 335 (IV) (B) (100 SC 1708, 64 LE2d 333) (1980); Ga. Const. Art. I, Sec. I, Par. XIV. While this Court has not previously considered the issue of whether defense counsel's undisclosed concurrent representation of the prosecutor and a defendant in a death penalty case gives rise to a per se presumption of prejudice,[1] we have applied the per se presumption to a death penalty case in which defense counsel acted both as defense attorney and law clerk in the same judicial circuit at the same time. *Sallie v. State*, supra, 269 Ga. at 447 (2). In *Sallie*, we unanimously held that defense counsel's simultaneous employment as counsel for the defendant and as a law clerk within the judicial circuit engendered, by itself, a disabling conflict. Id. at 448.

We conclude under the unique facts of this case that an actual conflict of interest existed because of defense counsel's concurrent representation of Danenburg and the district attorney, and given the enormity of the penalty, the conflict was completely impermissible. *Sallie*, supra, 269 Ga. at 447 (2). See also 3 LaFave, Israel & King, Criminal Procedure, § 11.9 (d) at 687-688; *South Carolina v. Gregory*, 612 SE2d 449 (S.C. 2005) (defense counsel's representation of prosecutor in divorce action created actual conflict requiring reversal of conviction for non-capital crime); *New Hampshire v. Cyrs*, 529 A2d 947 (N.H. 1987) (attorney's alleged involvement as target of same investigation giving rise to defendant's arrest requires per se rule of reversal).

Persons accused of [a] crime enjoy a sixth amendment right to the effective assistance of counsel. (*Cuyler v. Sullivan*

---

[1] In *Pruitt v. State*, 270 Ga. 745 (18) (514 SE2d 639) (1999), the conflict of interest was revealed and substitute counsel appointed prior to trial. Here, however, neither the prosecutor nor defense counsel disclosed the conflict to the court and the conflict existed at the time defense counsel advised Danenberg on the State's plea offer.

(1980), 446 U. S. 335, 343, 64 L. Ed. 2d 333, 343, 100 S. Ct. 1708, 1715; *Glasser v. United States* (1942), 315 U. S. 60, 70, 86 L. Ed. 680, 699, 62 S. Ct. 457, 464-65.) Effective assistance means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations. ([Cits.])

*Illinois v. Spreitzer*, 525 NE2d 30, 34 (Ill. 1988). A situation in which an attorney represents both the prosecutor and the defendant in a criminal proceeding necessarily involves divided loyalties and gives the defense attorney a personal interest in the way he conducts the defense, an interest independent of and in obvious conflict with, the defendant's interest in obtaining a judgment of acquittal. While there is no evidence in this case that defense counsel consciously performed deficiently or dishonorably as a result of his divided loyalties, even the performance of the most honorable attorney under similar circumstances could be subtly or unknowingly affected in ways difficult to detect on review. The mere existence of such an obvious and deleterious conflict undermines the adversarial process and calls into question the reliability of the outcome of proceedings. In this regard, we agree with the reasoning of the Fifth Circuit in *Zuck v. Alabama*, 588 F2d 436, 439-440 (5th Cir. 1979), a case in which defense counsel also simultaneously represented the prosecutor:

> The prosecutor and the defense attorneys here were adversaries for the purpose of this trial. It is sufficient to establish a constitutional violation that the defense attorneys owed a duty to [the defendant] to endeavor to refute the prosecutor's arguments and to impeach his witnesses. This being so, . . . the defense attorneys were subject to the encumbrance that the prosecutor might take umbrage at a vigorous defense of [the defendant] and dispense with the services of their firm. . . .
>
> A defense attorney must be free to use all his skills to provide the best possible defense for his client. Despite the noblest of intentions, the defense attorneys here may have been tempted to be less zealous than they should have been in the presentation of [the defendant's] case. This possibility is sufficient to constitute an actual conflict of interest as a matter of law.

Accordingly, we affirm that part of the habeas court's order granting relief based on the existence of an impermissible conflict of interest.

2. Our holding in the first division renders consideration of Danenberg's remaining enumerations of error unnecessary.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 2005.

Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellant.

Bell & James, John C. Bell, Jr., Robert W. Cullen, Robert L. McGlasson, for appellee.